IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN SEYMORE,                            :
               Plaintiff         :
         v.                       :  Civil Action No. 04-279J
JOANNE B. BARNHART, COMMISSIONER  :
OF SOCIAL SECURITY,                       :
              Defendant         :

## Report and Recommendation

### Recommendation

Brian Seymour (the plaintiff's name in the caption used by the parties is Brian Seymore, but he spells his surname Seymour, see Tr. 23, 140) appeals from the unfavorable decision of the Commissioner of Social Security, denying his application for disability benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401-33, and supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C.§§ 1381-83f. Counsel advises that a later application by plaintiff for benefits was granted, docket no. 12, Plaintiff's Brief at 1-2. This appeal is from the findings of an ALJ who concluded, on July 15, 2004, that Seymour was not disabled as of that date. Tr. 14-20. The Appeals Council denied review on September 22, 2004, Tr. 6-9, thus making the ALJ's findings the basis for the Commissioner's decision. Because substantial evidence supports the ALJ's findings that Seymour was not disabled for the period in question, I recommend that the defendant's motion for summary judgment, docket no. 14, be granted, the plaintiff's motion for summary judgment, docket no. 11, be denied, and the decision of the Commissioner affirmed.

Report

The court's duty in reviewing a denial of disability benefits and SSI is to determine whether "substantial evidence," 42 U.S.C.§ 405(g), 1383(c)(3), that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971), supports the ALJ's findings that Seymour was not disabled.  See Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999); Hartranft v. Apfel, 181 F.3d 358, 359 (3d Cir.1999).  The definition of disability for purposes of disability benefits and SSI requires an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C.§§ 423(d)(1)(A), 1382c(a)(3)(A).  It is the disability, not merely the impairment, which must last or be expected to last twelve months.  Barnhart v. Walton, 535 U.S. 212 (2002).

My responsibility is to examine the whole record, not simply to confirm the existence of those pieces of evidence relied upon by the ALJ, see Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir.2003)(citation omitted); Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir.1986), and I have therefore read the entire record, whether cited by counsel or not.  The substantial basis level of review does not, however, permit the court to substitute

its view of the evidence judgment for that of the ALJ.   See Schaudeck v. Commissioner, 181 F.3d 429, 431 (3d Cir.1999).

The ALJ used the five-step disability analysis set forth at 20 C.F.R.§§ 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).   It is not in dispute that at step one: (1) Seymour quit his job as a residential care assistant in two group homes for mentally impaired adults on February 13, 2003, his alleged onset date, and was not employed after that date; and at step two (2) he has severe impairments: cervical disc degeneration, depression, anxiety, and he is HIV positive.   Seymour argued before the ALJ that he meets the Listings 12.04 (affective disorders), 12.06 (anxiety related disorders), 12.08 (personality disorders), and 14.08(J)(HIV-caused chronic diarrhea), Tr. 61-62, and he cursorily argues that again here, with the addition of a reference to Listing 1.04 (arthritis of a major joint in each of the upper extremities) [sic: probably meant to be Listing 1.05 (disorders of the spine)].   With the exception of a partial reference to a part of Listing 14.08, however, plaintiff's step three argument in full is a recitation of plaintiff's medical history followed by the single sentence: "In light of the above it is the claimant['] s position that he meets or approximates the above cited listings and is totally disabled."  docket no. 12 at 7.  My role is not to determine whether plaintiff meets the listings, it is to determine whether the ALJ had substantial evidence for his determinations.  Counsel cannot

3

simply point to the record and ask the court to find the most appropriate listing: he is required to show how the medical evidence satisfying each element of the relevant listing compels a finding that the ALJ erred in rejecting the relevant listing.   The plaintiff's step three argument betrays no familiarity with the elements of any of the listings and should be considered waived.

At the fourth step the ALJ found that (4) Seymour was limited to light or sedentary exertion and so could not return to his most recent relevant past heavy semiskilled work as a residential care assistant.   Seymour had also performed medium semiskilled work as a shop floor supervisor for the New Pig Corporation, a local manufacturer, for about 10 years.   See Tr. 54-55, 114.

At the fifth and final step, the ALJ found that (5) Seymour retained the residual functional capacity to do the work necessary in a limited range of light and sedentary jobs.   The ALJ posed a hypothetical to the vocational expert assuming that a person of Seymour's age and work experience had the ability only to do light or sedentary work, and that even at that level the person needed a sit/stand option and access to a bathroom, and was limited to simple repetitive tasks not involving overhead reaching, and which required only a minimal amount of interaction with coworkers and supervisors.   Tr. 56.   The vocational expert testified that even with those limitations, an individual of Seymour's age, education,

4

and experience could perform jobs such as small electronic parts tester, television monitor, parts assembler, envelope sorter, and injection mold press operator. The vocational expert stated that there were hundreds of thousands of such jobs in the national economy. Tr. 57. Plaintiff added the hypothetical condition that plaintiff could not handle any work stress or bear any contact with coworkers, Tr. 59-60, which unsurprisingly caused the vocational expert to testify that such an individual could not work in a non-sheltered workplace. Tr. 60-61. The ALJ rejected the additional hypothetical limitation.

The dispositive question on appeal is whether the ALJ's hypothetical to the vocational expert adequately contained all of the functional limitations caused by Seymour's nonexertional impairments. See Ramirez v. Barnhart, 372 F.3d 546, 552-53 (3d Cir.2004); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987). As in Ramirez, the hypothetical posed to the vocational expert must contain all the limitations the ALJ does find; as in Chrupcala, substantial evidence must support the choice of the ALJ to reject limitations the ALJ does **not** include in the hypothetical.

Seymour was born in 1968, and was only 35 when the ALJ issued his decision; Seymour was a high school graduate who had attended some college, the branch campus of Penn State University in his hometown, during the time he claimed to be totally disabled,. Seymour was diagnosed with HIV by March 2002, by Janelle Brumbaugh,

5

D.O., Tr. 146-53. Brumbaugh also ordered an MRI which showed that Seymour had some small extruded cervical discs at the C3-4 and C6-7 spaces, but also that there was no cervical disc herniation or other abnormality. Seymour continued to work as a residential care assistant in a group home for a year after Brumbaugh diagnosed him as HIV positive, until he quit in February 2003. After his diagnosis, Seymour attended the AIDS Intervention Project of the Home Nursing Agency, and there are extensive notes by his case manager, Angie Peacetree, Tr. 245-63, as well as notes by his counselor, Pat England, 265-84. According to Peacetree's notes and Seymour's testimony, Seymour quit his job a year after his diagnosis not because he was disabled from all gainful employment but because he was persuaded that because residents would sometimes strike or bite staff, blood to blood contact might infect the residents with HIV. See Tr. 28, 263. Despite giving the day he quit work as his onset date, plaintiff nevertheless returned to college to enhance his employability, and "fe[lt] strongly" that he was only "temporarily disabled." Tr. 260. As late as January 2004, he believed himself capable of at least part time work. Tr. 252. Robert Sullivan, M.D., the infectious diseases specialist who treated Seymour, found that Seymour was doing "OK" in May 2003, Tr. 214. Sullivan described Seymour's HIV as "asymptomatic" in the same month, and completed a disability evaluation which found Seymour had **no** physical limitations, Tr. 170-71. Sullivan repeated his

6

diagnosis that Seymour was asymptomatic in August 2003. Tr. 213. Sullivan signed a two paragraph "to whom it may concern" letter dated January 19, 2004, stating that Seymour was disabled at this time. Tr. 236. Seymour argues that the ALJ did not give this letter appropriate weight, and the Commissioner responds that because Sullivan was not treating or expert in mental health issues his opinion could be discounted properly by the ALJ. The record shows more than that: in a rare peek back-stage, Seymour's caseworker, K. Henderson, noted on January 16, 2004, that Sullivan was busy and probably could not provide a timely letter supporting Seymour's disability, but that his office manager responded to Henderson's offer to draft the letter and fax it to Sullivan's office with "you can try." Tr. 251. Under the circumstances, the plaintiff's argument that the ALJ failed to give this opinion appropriate weight, docket no. 12 at 7, is not convincing at all.

According to Sullivan's disability evaluation in May 2003, Seymour's limiting condition was "psychological factors." Tr. 171. Cecelia Levich, M.D., a psychiatrist, examined Seymour in June 2003, and reported that Seymour was anxious and depressed, but answered questions readily, and showed no signs of psychosis or suicidal ideation. She also noted that his HIV was asymptomatic. and that Seymour planned to return to school. Tr. 210-111. Another psychiatrist, Doo Wan Cho, M.D., examined Seymour in July 2003. Tr. 186-91. Cho also reported that Seymour was anxious, but

also reported no suicidal ideation, paranoia, thought disorder, or hallucinations.   Cho opined that Seymour suffered from dysthymic disorder as a consequence of being aware he was HIV positive, and had anxiety and personality disorders not otherwise specified.   Cho administered no tests commonly used to measure depression (in fact no tests other than simple cognitive ability (serial sevens) and insight (interpret the proverbs) tests), basing his opinions on Seymour's self reporting of his symptoms.   By contrast, Jeffrey Payne, M.D., of Brumbaugh's practice, examined Seymour in July 2003, and reported that Seymour had no depression or anxiety.   Tr. 230-31.  In October and November 2003, Brumbaugh noted that Seymour complained of migraine headaches approximately once per month, but that he had no gastrointestinal complaints or other notable ailments.   Tr. 222-23, 219-20, 227.

Quentin Dolphin, M.D., a psychiatrist, saw Seymour beginning in August 2003.   Tr. 208-09, 238-42.   Dolphin noted that Seymour's HIV was asymptomatic, and that his anxiety was being treated with Zoloft, an anti-depressant.   Dolphin saw Seymour again in October 2003, and opined that Seymour looked ill and might want to withdraw from school.   Dolphin decreased Seymour's Zoloft dosage at this time.   Tr. 208.   In January 2004, Dolphin filled out a form for the Department of Public Welfare reporting that Seymour was "temporarily disabled" due to depression and anxiety.   Tr. 242.  About the same time in January 2004, Pat England, reported that

8

Seymour denied being depressed, had only mild anxiety and showed no symptoms of depression.   Tr. 266.

In February 2004, Dolphin reported that Seymour was doing well in adjusting to some social stresses, that he was well groomed, cooperative, and appropriate in his eye contact, but seemed "slightly" dysphoric.   Tr. 241.   In March 2004, England again described Seymour as showing no signs of depression.   She noted that Seymour reported more anxiety (mild to moderate) and that his stated goal was "to get my social security."   Tr. 274.

In May 2004, Dolphin noted that Seymour had withdrawn from college due to the stress.   Tr. 238.   Nevertheless, Seymour was not having panic attacks or other psychological decompensation.   On June 1, 2004, England noted Seymour's complaints of mild depression and anxiety, but reported that Seymour showed no signs of depression or anxiety.   Tr. 268.   Seymour made a complaint in late 2003 about pain in his flank, Tr. 254, and a complaint in early 2004 about leg pain that was considered as possibly being peripheral neuropathy caused by Seymour's prescriptions, Tr. 248, 239, but Sullivan examined Seymour and decided to wait at least three months to see if the complaint required action.   Tr. 248.   There are no later records about treatment of this complaint.

At the ALJ hearing, despite the no physical limitations opinion of his treating physician and the absence of any records of treatment for peripheral neuropathy or cervical complaints, Seymour

9

testified that he could stand for only about 15 minutes at a time before his legs would go numb and give out, that he could walk one block before needing to rest, and that he could lift only about five pounds. Tr. 37, 45-46. Compare Tr. 132 (self assessment of May 2003). Seymour also testified that he thought about suicide three times a day and had diarrhea three times a day. Tr. 38-39. Seymour nevertheless was able to have custody of his two adolescent sons for significant stretches of time. See Tr. 252, 260.

The ALJ accepted Seymour's description of his limitations in large part even where there was contrary medical evidence, and limited Seymour to light exertional work that was simple and nonstressful due to Seymour's nonexertional impairments of anxiety and depression. The record shows that Seymour had no physical or cognitive limitations as a result of his anxiety and depression, which Peacetree's notes described as related appropriately to various external stresses such as Seymour's indigence, court appearances about child support, or concerns about his children. Although Seymour testified to the total impairment of functioning caused by his psychological conditions, the record is devoid of decompensation or even major intervention: Seymour was treated with steady or decreasing doses of the same medications, and counseling.

The diagnosis of a condition, even a serious one like anxiety, depression, or HIV infection, which is not accompanied by impairment of functional capacity, is not a disabling condition.

Petition   of   Sullivan,   904   F.2d   826,   844-45   (3d
Cir.1990)(alcoholism); see also 20 C.F.R. §404.1530(b). Seymour was
planning to attend or attending college for a significant amount of
the time he alleges he was disabled.  If Seymour dropped out solely
because of depression and anxiety and not from external stresses not
present in the jobs the vocational expert identified in response to
the ALJ's hypothetical, on this record it is still the case that the
only condition of record which limited Seymour's capacity to do work
during the time period under consideration by the ALJ is the
nonexertional limitation of depression and anxiety.  Peacetree and
England's notes document that those conditions were mild at their
most severe, and came and went depending on the circumstances of
Seymour's environment.

The ALJ had substantial evidence to support his partial
acceptance of Seymour's testimony about the **severity** of his
depression and anxiety, and his rejection of more severe physical
restrictions on Seymour, that is: 1) the repeated opinions of
medical professionals that Seymour was physically doing well and
that his psychological symptoms were mild; 2) Seymour's exaggeration
relative to the record of all of his limitations at the hearing
before the ALJ; 3) the lack of an objectively verifiable basis for
the opinions of some professionals (such as Cho's); and 4) the
minimal level of treatment Seymour received for his allegedly
disabling anxiety and depression.  See Simmonds v. Heckler, 807 F.2d

54, 56-58 (3d Cir.1986) (claimant's testimony that she had disabling pain accepted by ALJ in finding claimant capable of exertional demands of no more than sedentary work; ALJ not ignoring testimony by refusing to accord it full credence).

The ALJ's hypothetical to the vocational expert therefore reflected a range of the disabilities and limitations that the ALJ could correctly have found Seymour to have.  See Chrupcala v. Heckler, 829 F.2d at 1276 (For the vocational expert's testimony to be substantial evidence, a hypothetical question must reflect all of the claimant's disabilities supported by the record.)  The vocational expert's testimony that a substantial number of jobs existed which a person like Seymour could perform was therefore a substantial basis for finding him not disabled.  The Commissioner's decision should be affirmed.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.


DATE: 04/04/06

Keith A. Pesto,
United States Magistrate Judge

Notice to:
    J. Kirk Kling, Esquire
    630 Pleasant Valley Boulevard, Suite B
    Altoona, PA 16602

    John J. Valkovci, Jr., Esquire
    224 Penn Traffic Building
    319 Washington Street
    Johnstown, PA 15901